The felony of which the defendant was convicted was committed on board of a steamboat while on her passage from the city of New York to Norwich in the state of Connecticut, at a time when the boat was in Long Island Sound opposite to the county of Suffolk, near to the shore, between Sands Point and Huntington. It is contended on the part of *Page 297 
the plaintiff in error that the place where the offence was committed was not within the state of New York; and therefore that the conviction was illegal for want of jurisdiction in the court in which it took place.
The jurisdictional boundary lines of this state as declared by the revised statutes, begin at Lyon's Point in the mouth of a brook or river called Byram river, where it falls into Long Island Sound. The description then proceeds with great minuteness and particularity of courses, distances and monuments, defining the eastern, northern, western and southern boundaries of the state, until it comes to a rock on the west side of Hudson's river, in the latitude of forty-one degrees north. The description then proceeds in the following words: "Then southerly along the west shore, at low water mark of Hudson's river, of the Kill Van Kull, of the sound between Staten Island and New Jersey and of Raritan Bay to Sandy Hook; and then to the place of beginning in such manner as to include Staten Island and the islands of meadow on the west side thereof, Shooter's Island, Long Island, the Isle of Wight, now called Gardiner's Island, Fisher's Island, Shelter Island, Plumb Island, Robin's Island, Ram Island, the Gull Islands and all the islands and waters in the bay of New York and within the bounds above described" (1R.S. 61 to 65, § 1).
Does this description include the locus in quo? The question is one of no ordinary importance and difficulty. Its solution must depend upon the construction to be given to the language employed in defining the last course of the description, viz. "in such manner as to include" the islands, c. enumerated. If it had concluded with the words, "and then to the place of beginning," a straight line from Sandy Hook to Lyon's Point in the mouth of Byram river would have been intended, which would have excluded the whole of Suffolk, the greater part of Queens and a portion of Kings counties, leaving the place where the larceny was committed clearly to the east of and without the boundaries of the state. But the line must run in such manner as to include the islands,c. mentioned. *Page 298 
There have occurred to my mind two modes of running the line in question, either of which will secure this object, and one of which, it seems to me, should be substantially adopted.
The first is to start from Sandy Hook and run the line by straight courses so as to include the islands mentioned, making, with a direct straight line from Sandy Hook to Lyon's Point, an irregular figure, the exterior of which shall consist wholly of straight lines, with angles of unequal quantities, and with the vertex of each angle pointing outward from the interior of the figure. This would run the northern line of the figure or tract from some point on Fisher's Island to Lyon's Point in a direct course, and would include the locus in quo.
The second is to run the line directly from Sandy Hook to the place of beginning, in the mouth of Byram river, diverging from a direct course so far, and so far only, as is necessary to include the islands, c. mentioned, and as soon as that object is attained to return to the original straight direction. By this mode, it is intended to include the whole of the sound lying cast of the first mentioned direct line from Sandy Hook to Lyon's Point, and consequently the place where the offence was committed. I am inclined to adopt the latter of these modes for the following reasons:
Section one of title one of chapter two of the first part of the revised statutes (3 R.S. 1) declares that the state shall be divided into fifty-six counties. This undoubtedly means that the whole state shall be so divided including the waters and the lands covered with water within its bounds, as will presently be made to appear. Section two of the same statute contains a particular description of the extent and boundaries of each of said fifty-six counties. Long Island Sound is either a part of the high seas or an arm of the ocean, much the largest portion of it separating the state of Connecticut from that part of the state of New York comprising the whole of the county of Suffolk and a part of the county of Queens. These two counties are bounded on the north by the Sound (3 R.S. 2d ed. pp. 1 and 2, § 2). The state of Connecticut is bounded on the south by the same Sound, and no reason is perceived why that *Page 299 
state has not the same right as the state of New York to claim those waters to be within her territory.
The counties of New York and Richmond contain certain waters and lands under water, particularly mentioned in the statute defining their boundaries respectively while neither the counties of Suffolk, Queens or Westchester, each of which is contiguous to the Sound, embrace any part of it, either in terms or by fair or necessary implication, excepting the county of Westchester, which by its easterly bounds is made to embrace that part of the Sound lying westerly of a straight line from Sandy Hook to Lyon's Point as the west bounds of that part of the state, and excluding that part of the Sound which is declared to be the south boundary of the county. By the act last referred to, all the counties bordering on the Hudson river above Westchester, on both sides, extend to the middle of the river; and Westchester extends to the west shore at low water mark from its south-west corner as far north as the north-east corner of New Jersey; although by the compact between the states of New York and New Jersey, dated September 16th, 1833 (3 R.S. 2d ed. pp. 175, 6 and 7), the division line between the two states was established in the middle of Hudson river, and consequently would limit the west bounds of Westchester to that line. All the counties bordering on lakes Ontario and Erie extend north into those lakes to the boundary line between the United States and the British dominions; those lying on the rivers Niagara and St. Lawrence, to the same boundary line where it passes through those rivers opposite the same counties and the counties on Lake Champlain to the boundary line of the state where it runs through the middle of the last mentioned lake.
A careful examination will show that every part of the state is located in some one of the counties enumerated in the statute, and that no part of Long Island Sound except so much of it as Westchester includes is embraced in either. There is no authoritative description of either of the counties of this state, which embraces any other portion of the Sound; and the fact that some of the counties in its neighborhood are made to embrace, in express terms, adjacent waters and lands under water, *Page 300 
and that those on Lakes Erie, Ontario and Champlain and on the rivers Niagara and St. Lawrence are extended into those lakes and rivers to the exterior lines of the state, and that the north and east rivers are embraced in contiguous counties, in and by the same statute and section which bounds the counties of Suffolk and Queens upon the north and Westchester upon the south on the Sound, is strong, if not conclusive, to show that the state never claimed any part of the Sound except that part of it lying in Westchester county to be within her territory or to extend the jurisdiction of her courts over any other part of it. But whatever may be the technical construction of the statute, it should yield, if necessary, to a more enlarged view of the question. Long Island Sound is by well settled rules a part of the high seas, and no one of the states bordering upon it has the right by any statute or other act of sovereignty to extend her jurisdiction over it. The high seas include all those parts of the main ocean which are not within the fauces terræ — the mouth or chops of a channel. That is the space between the head lands, so near to each other, that a person on one of them can see with the naked eye what is doing on the other. If the headlands or points upon the main land are thus near, the water within them is an arm of the sea denominated a bay, gulf, estuary, c., as the case may be, and is included or may be in the adjoining state or country. If the distance between the headlands is greater than that mentioned, the waters between and within them belong to the high seas and are exclusively under the maritime jurisdiction of the federal courts. No one will contend that the Sound, at the place where the crime in this case was committed, or that the entrance to it at the east end of Long Island or at any place between those points, is so narrow as to come within the above description or definition of the faucesterræ.
There is, however, another view which must determine the case in favor of the plaintiff in error.
Admitting the locality of this larceny to be within this state, the question arises, in what county is it? It is not and can not be contended that it is in the county of New York; and it is *Page 301 
objected on the part of the plaintiff in error that there was no authority to indict or try him in that county.
The counsel for the defendants in error relies upon the provision of the revised statutes declaring that "when any offence shall have been committed within this state on board of any vessel navigating any river, lake or canal, an indictment for the same may be found in any county through which such vessel shall be navigated in the course of the same voyage or trip, or in the county where such voyage or trip shall terminate; and such indictment may be tried and a conviction thereon had in such county, in the same manner and with the like effect as in the county where the offence was committed (2 R.S. 727, § 44). In the case of the People v. Hulse (3 Hill, 309) this statute received a construction with which I fully agree. In that case the defendant was indicted and tried for a rape in the Suffolk county oyer and terminer. On the trial it appeared that the offence was committed on board of a vessel while on a voyage from the city of New York to Belleport in the town of Brookhaven, in the county of Suffolk, and while the vessel was lying at anchor in a bay or cove on the south side of Long Island and within the county of Kings, being detained there by adverse winds. The voyage was down the Hudson to the mouth of the same, and thence through the Atlantic ocean to the place of destination; about four-fifths of it being in the ocean. The court held that there had been a mis-trial, and quashed the indictment on the ground that it had been found and tried in the wrong county; and that it was clear that the offence must be committed while the vessel is in the river in order to be within the statute. The case referred to is precisely like the present in principle and decides it, assuming the locality of the offence in this case to have been within the state. The locus in quo in each case was on board of a vessel when not in a river, and while on a voyage or trip, a portion whereof was through a river.
It was contended by the counsel for the defendants in error, that the portion of the Sound where the larceny was committed is properly a river, and in support of this idea we were referred *Page 302 
to several statutes in which as was contended the Sound is designated "The East River or Sound," and that those terms are applied indiscriminately to the waters in question. On reference to those statutes they are found to be those which describe the boundaries of the county of Westchester and the city and county of New York, and clearly refer to the East river before it enters or unites with the Sound. If it were otherwise, and the Sound at the place in question was in statutes distinctly referred to by the term river, it could only be regarded as a descriptio rei
and would afford at most but very slight evidence of its character in this respect. The Sound at its narrowest place between Sand's Point and Huntington must be from eight to ten miles wide; and as it proceeds eastward it becomes broader until it attains the width of about twenty-five miles. It seems to me it can not in any just or proper sense be termed a river.
There were other points raised upon the argument which it becomes unnecessary to consider, because if either of the views which I have taken be correct the judgment of the Supreme court and that of the court of sessions should be reversed.